UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EDUARDO SEGUNDO JIMENEZ-RAMOS,

v.                                                    Case No. 8:06-cr-384-T-24TGW
                                                              8:07-cv-2249-T-24TGW

UNITED STATES OF AMERICA.
_____

O R D E R

This cause is before this Court on Defendant Jimenez-Ramos' 28 U.S.C. § 2255 motion to vacate, set aside, or correct an allegedly illegal sentence. (Doc. cv-1; cr-102). Because review "of the motion and the file and records of the case conclusively show that the defendant is entitled to no relief," the Court will not cause notice thereof to be served upon the United States Attorney but shall proceed to address the matter. See 28 U.S.C. § 2255.

Background

On November 7, 2006, Jimenez-Ramos pled guilty, pursuant to a plea agreement, to conspiracy to possess with intent to distribute more than five kilograms of cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of 46 Appendix, U.S.C. §§ 1903(a), 1903(g) and 1903(j) (count one of a two-court Indictment). (Doc. cr-31; cr-42; cr-74).  On February 9, 2007, the Court sentenced Jimenez-Ramos to one hundred and thirty-five months incarceration as to count one. Count two was dismissed on the Government's motion. (Doc. cr-72; cr-104)  Judgment was entered that same day. (Doc. cr-74).

Defendant did not file a direct appeal.  On December 10, 2007, Jimenez-Ramos timely filed the present 28 U.S.C. § 2255 motion to vacate.

## Discussion

### Ground One

Jimenez-Ramos contends that the Court lacked jurisdiction to "maintain this case against Defendant because Defendant never intended to possess or distribute with the intent to distribute cocaine in the USA."   This claim has no merit.

Jimenez-Ramos' plea agreement contains the following factual basis for the charge to which Jimenez-Ramos pled guilty:

> On or about September 9, 2006, defendant Eduardo Segundo Jimenez-Ramos agreed with his co-defendants and others to possess with intent to distribute more than five kilograms of cocaine while on board a go-fast vessel that was subject to the jurisdiction of the United States.  On that date, a marine patrol aircraft located a go-fast vessel approximately 54 nautical miles north of Guajira Peninsula, Colombia, in the Caribbean Sea, that was crewed by the four defendants, with a number of fuel barrels visible onboard. A U.S. Coast guard helicopter was dispatched from USCGC Gallatin and once it arrived on scene, defendants attempted to flee and began jettisoning bales of cocaine and other items (clothing, tarp, navigation equipment). The go-fast vessel refused to stop and ignored warning shots from the USCG helicopter.  After disabling fire from the USCG helicopter, the vessel stopped and a boarding crew from the USCGC Gallatin arrived on board the go-fast.  The USCGC received a statement of "no objection" from [sic] Colombian government and the vessel was assimilated to be stateless (i.e., a vessel without nationality) and therefore, subject to the jurisdiction of the United States. Approximately 37 bales of cocaine weighing approximately 1850 pounds (approx. 840 kilograms) were recovered by the USCG.

(Doc. cr-31 at 14-15).  Jimenez-Ramos initialed each page of the plea agreement, and signed the plea agreement.  He certified, by his signature, that the plea agreement had been read to him "in its entirety"  and that he fully understood its terms. (Doc. cr-31 at 15).

When Jimenez-Ramos pled guilty, he agreed that he was aboard a vessel subject to the jurisdiction of the United States when the crimes occurred. The United States' jurisdiction was based on the Maritime Drug Law Enforcement Act (MDLEA), 46 U.S.C. §§ 1903(a), (g), and (j).

The Piracies and Felonies Clause empowers Congress "To define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations." U.S. Const. Art. I, § 8, cl.10. In enacting the MDLEA, Congress found and declared these things: trafficking in controlled substances aboard vessels is a serious international problem and is universally condemned. Moreover, such trafficking presents a specific threat to the security and societal well-being of the United States. 46 U.S.C. app. § 1902. The MDLEA provides, in relevant part, that "[i]t is unlawful for any person ... on board a vessel subject to the jurisdiction of the United States ... to possess with intent to manufacture or distribute, a controlled substance." 46 U.S.C. app § 1903(a). A "vessel subject to the jurisdiction of the United States" includes "a vessel without nationality." 46 U.S.C. App. § 1903(c)(1)(A). Under the MDLEA, the United States had jurisdiction over the go-fast boat and over Jimenez-Ramos. In addition, Jimenez-Ramos aknowledged that the United States had jurisdiction in his plea agreement. (Doc. cr-31 at 31 ¶ 9) Therefore, ground one does not warrant relief.

## Ground Two

Jimenez-Ramos alleges that he worked "along with his father as an inspector with a Columbian Government Agency and therefore was immune under the Foreign Sovereign Immunities Act." In his memorandum in support of ground two, Jimenez-Ramos admits

that under the Foreign Sovereign Immunities Act (FSIA), the FSIA immunity does not extend to individuals who act outside the scope of their authority.

The FSIA is "a comprehensive statute containing a 'set of legal standards governing claims of immunity in every civil action against a foreign state or its political subdivisions, agencies, or instrumentalities,' " and transfers responsibility for immunity determinations from the Executive to the Judicial Branch. *Republic of Austria v. Altmann*, 541 U.S. 677, 691 (2004) (quoting *Verlinden B.B. v. Central Bank of Nigeria*, 416 U.S. 480, 488 (1983)). The FSIA "grants federal courts jurisdiction over civil actions against foreign states, and over diversity actions in which a foreign state is the plaintiff ...." 541 U.S. at 691. *See also Enahoro v. Abubakar*, 408 F.3d 877, 881-882 (7th Cir.2005) (finding the FSIA does not apply to individuals connected with foreign governments; noting that even where it has been applied to individuals by other courts it is only where the individual was acting in his official capacity) (citations omitted); *Velasco v. Government Of Indonesia*, 370 F.3d 392, 398-399 (4th Cir.2004) (FSIA extends to an individual acting in his official capacity on behalf of a foreign state, but not where the individual exceeds his authority).

Jimenez-Ramos claims that he was acting within the scope of his authority because he was "scoping out a drug operation for his employer when he was arrested." He contends that he is entitled to immunity because his activity related to his official capacity. Jimenez-Ramos' contentions are not supported by the record.

Jimenez-Ramos did not claim that he was working for the Columbian Government at his sentencing hearing when the Court asked him if there were anything he would like to say. Jimenez-Ramos stated:

>THE DEFENDANT:  Yes.  I have already asked the forgiveness of God, and he has forgiven me.  And now I ask your forgiveness for my crime.  I thank God that we were captured so that the drugs did not arrive at their final destination.
>
>And now that I have been captured, I realize that even [sic] one is a victim of those cursed drugs.  If it weren't because I have a poor family, I would tell you to hand down a sentence, whatever sentence you wanted, because here I breathe peace.  But unfortunately, I have a very poor family, and they depend on me, and that's why I ask you to have mercy upon us, as God has mercy upon all of us.

(Doc. cr-104 at 20).

Also at the sentencing hearing, Jimenez-Ramos' counsel stated that Jimenez-Ramos " had a large tumor on the back of his head. . . and that he was told in Columbia before he came that he had a tumor, and it would cost about $5,000 to remove it, which he did not have.  That was the reason for being on the boat."  (Doc. cr-104 at 11-12).

The PSI states that Jimenez-Ramos' 78-year old disabled father had worked as an inspector with an unknown government agency;  however, the PSI does not state that Jimenez-Ramos worked with his father in any capacity.  (PSI at 5, ¶ 34, 35)  Furthermore, Jimenez-Ramos stated that he earned his living as a fisherman his entire life. (PSI at 6, ¶ 42).

Nothing in the record supports Jimenez-Ramos' claim that he was immune from prosecution under the FSIA because he had worked with his father as an inspector with a Colombian Government Agency, or that he had been hired by the Columbian government to "scope out a drug operation."  The record demonstrates that Jimenez-Ramos knew that he was committing a crime when he conspired to possess with intent to distribute more than five kilograms of cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of 46 Appendix, U.S.C. §§ 1903(a), 1903(g) and 1903(j).

Ground two does not warrant relief.

## Ground Three

Ground three contains several claims. Jimenez-Ramos alleges:

> In this case, the record does not reflect that the defendant read or discussed the PSI or PSI Addendum with counsel. Defendant never saw the report yet alone read and discussed it with counsel. Counsel was ineffective in failing to object when defendant specifically told him that he was to dispute the factual assertions that the drug quantity was over a total of 5 kilograms. Defendant also wanted to raise the issues related to the jurisdiction in this case since he never intended to distribute and possess cocaine in the United States. This prejudiced Defendant because if he would have been successful he would have received a lower sentence or he would have been released from custody for want of jurisdiction. Defendant had no idea counsel was not going to file these objections because he also never saw the PSI addendum and where he does not speak or read English he was entitled to have copies of these documents in English and Spanish which he had neither. This violated Fed. R. Crim. Proc. 32. Defendant must be resentenced. Sentencing court's failure to verify that defendant and his counsel read and discussed presentence report requires that sentence be vacated and remanded for resentencing, since district court failed to determine whether defendant even read report, much less whether he was afforded opportunity to discuss it with counsel. Defendant also contests the fact that he did not receive the 5k.1 he was seeking because his co-defendants received it which violated not only Due Process but also Equal Protection under the Fifth Amendment as he was a class based Indian aboriginal and his co-defendants were Latino Columbians, a different class. For this purpose he was discriminated against in violation of the equal Protection Clause contained in the fifth Amendment and in violation of substantive Due Process. . . . Accordingly, Defendant must be resentenced with effective counsel and the Court must verify that he has a chance to read and discuss the PSI and PSI addendum with counsel. Defendant also requests that the Court reconsider if or not he played a minimal role in this case at the time of sentencing.

A. Jimenez-Ramos' contention that he never read or discussed the PSI with his attorney, and that the sentencing court failed to determine whether Jimenez-Ramos ever read the report or discussed it with counsel is contradicted by the transcript of the sentencing hearing. (Doc. cr-104).

A review of the transcript demonstrates that a sworn interpreter translated for Jimenez-Ramos.

At the opening of the hearing, the Court questioned Jimenez-Ramos:

> THE COURT: I have in front of me a Presentence Report that was prepared by the Probation Office. I have read through it; have you been over it with your attorney?
>
> THE DEFENDANT. Yes.
>
> THE COURT: All right. Have you had a sufficient amount of time to ask questions?
>
> THE DEFENDANT: Yes.

(Doc. cr-104 at 4). Jimenez-Ramos swore that he had discussed the PSI with counsel. The record demonstrates that the sentencing court specifically asked him whether he had discussed the report with counsel and that he answered, "Yes." This claim has no merit.

B. Jimenez-Ramos' claim that counsel was ineffective because he did not dispute "the factual assertions that the drug quantity was over a total of 5 kilograms" and did not raise the issue related to jurisdiction also has no merit. Jimenez-Ramos claims that the outcome of the sentencing hearing would have been different if counsel had disputed the drug quantity. In short, Jimenez-Ramos claims that he was prejudiced by counsel's failure to challenge the drug quantity and the Court's jurisdiction over him.

Standard for Ineffective Assistance of Counsel

The Sixth Amendment right to counsel is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The benchmark for judging any claim of ineffective assistance of counsel, however, is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington*, 466 U.S. 668, 688 (1984);

*see also Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1984). The burden is on the defendant to demonstrate that (1) counsel's performance fell below an objective standard of reasonable professional assistance and (2) the defendant was prejudiced by the deficient performance. *United States v. Cronic*, 466 U.S. 648, 658 (1984).

Jimenez-Ramos pled guilty pursuant to a plea agreement in which he admitted in the factual basis that approximately 37 bales of cocaine weighing 1850 pounds, or 840 kilograms, were recovered by the USCG. (Doc. cv-31 at 15 ¶ 9). At sentencing, the Court stated that there were 37 bales of cocaine, for a total of 840 kilograms or 1,850 pounds of cocaine on the go-fast boat. (Doc. cr-104 at 4). Jimenez-Ramos did not dispute the amount. Jimenez-Ramos had an opportunity to contest the amount at the change of plea hearing and at the sentencing hearing. He did not do so. Jimenez-Ramos cannot now claim that he was prejudiced by counsel's failure to dispute "the factual assertions that the drug quantity was over a total of 5 kilograms." Neither can he show that counsel was ineffective for failing to challenge the Court's jurisdiction for the reasons set out in Ground One above.

C. Jimenez-Ramos claims that he was discriminated against and that his rights to equal protection and substantive due process were violated because he did not receive a USSG section 5k1.1 downward departure. The Government did not file a USSG § 5K1.1 motion and Jimenez-Ramos has not shown that he was entitled to a USSG section 5K1.1 downward departure. At sentencing, Jimenez-Ramos' counsel stated that Jimenez-Ramos had cooperated as fully as he was able within the scope of his knowledge, but at the time of sentencing, "that hasn't come to any fruition under a 5K1, and I understand the Government's standards and policies." (Doc. cr-104 at 17).

A drug defendant is not entitled to downward departure at sentencing based upon his substantial assistance to the government, where the prosecutor did not file a motion for such departure and defendant neither alleged nor proved a specific unconstitutional motive underlying the failure to file the motion. U.S.S.G. § 5K1.1. *United States v. Dorsey*, --- F.3d ---, 2008 WL. 115428 (11th Cir. Fla., Jan. 14, 2008); *United States v. Daniels*, 147 Fed. Appx. 859 (11th Cir. 2005). Jimenez-Ramos has not met the standard for judicial for review of the Government's refusal to file a USSG § 5K1.1 motion in his case.

D.  Jimenez-Ramos also requests that the Court reconsider "if or not he played a minimal role in this case at the time of sentencing."  A claim for reconsideration of a minor role determination cannot be raised in a 28 U.S.C. § 2255 motion to vacate.  *See United States v. Ryan,* 289 F. 3d 1339  (11th Cir. 2002); *Soliman v. United States,* 2007 WL 951735 (M.D. Fla., Mar. 28, 2007). Furthermore, even if Jimenez-Ramos could properly raise the claim in a motion to vacate, the claim would have no merit because, at sentencing the Court considered all of the factors and circumstances of Jimenez-Ramos' involvement in the crime to which he pled guilty and correctly determined that he was not entitled to a minor role.

Ground Four

Jimenez-Ramos claims that he was not provided a copy of the Indictment in Spanish and that counsel was ineffective for failing to object to his not being provided copies of the pleadings translated into Spanish. Jimenez-Ramos claims that he did not understand English and did not understand United States law, but that if he had been provided copies of the pleadings in Spanish he could have consulted with counsel "to defend himself." Jimenez-Ramos further claims that if counsel had "objected, defendant would have

received a lower sentence because he would have contested the drug weight and the jurisdiction of the Court pursuant to his other arguments."

This claim has no merit. Jimenez-Ramos was provided an interpreter at all relevant phases of his proceedings, including at his change of plea hearing and at his sentencing hearing. Jimenez-Ramos has cited no law, and there is no law, requiring the Court to provide Jimenez-Ramos copies of the pleadings translated into Spanish. Ground four does not warrant relief.

Accordingly, the Court orders:

That Jimenez-Ramos' motion to vacate (Doc. cv-1; cr-102) is denied, with prejudice. The Clerk is directed to enter judgment against Jimenez-Ramos in the civil case and to close that case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Defendant is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v.*

*Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Defendant has not made the requisite showing in these circumstances.

Finally, because Defendant is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on January 25, 2008.

SUSAN C. BUCKLEW
United States District Judge

AUSA:  Kelley Clement Howard-Allen
Eduardo Segundo Jimenez-Ramos, pro se